May it please the Court, good morning. My name is David Yeung. I'm the counsel for Appellant, also defendant in this action. That's Jimmy Chan. I have 20 minutes for the briefing and the time allocation. May I propose I may spend about 12 minutes to brief on the issues and reserve another 8 minutes for the rebuttal? Sure. You have to manage your own time, though. Thank you. May I proceed? Sure. Thank you. Your Honor, the underlying action was filed in the Central District Court. This is a copyright infringement action. The defendant is two entities. One is called Media Group. It's a corporation and then also it's a corporation CEO. That's also the president. That's Jimmy Chan. And I'm representing Jimmy Chan only. The plaintiffs, it's called Appellant Recording Corporation and other business entities. And all of them, they are part of the association called RIAA. From now on, I'm going to use RIAA as the plaintiffs or appellees. Plaintiffs allege that the defendant corporation and Jimmy Chan jointly violated the copyright of the defendant's group members. And the plaintiffs filed a motion for summary judgment and for the copyright infringement. We're familiar with the background of the case and have read the briefs. And I don't want you to use up all your time refreshing this. The essential issue is concerning the will. Under the copyright law, 17 U.S.C. 504C, there's an enhanced penalty. Means if anyone, if you violate the copyright law, if your violation is determined as a will, then you will be subject to an enhanced penalty. That can be up to $150,000 per title or per infringement. And then the key issue will be what means willful. And when Congress enacted 17 U.S.C. 504C, it was not clear what exactly willful in the copyright setting in this particular statutory authority. What means willful? So it depends on each district. It depends on the Court of Appeals or each federal circuit court to define the willful. In this action, it's filed in the Ninth Circuit. So we follow the Ninth Circuit's interpretation of the willful. What means exactly willful under the Ninth Circuit? And from the briefs from both the appellants and the appellees, the case we cite is called, both sides of the case, the Pierce International case. And the Pierce International case, by the Ninth Circuit defined, the willful means knowledge. Means you live your infringer. If you know what your action is infringement, then you will be subject to willful infringement. And in Pierce International case, there was no discussion about reckless disregard standard will be treated as a willful. It's true there's no discussion because that's not what they had in that case. But I don't know that it establishes that reckless disregard could never be a willful. So far, from the brief from both appellants and appellees, we could not find any cited case in the Ninth Circuit. And in the brief, both sides. And from the appellant's side, we couldn't locate any Ninth Circuit's clear ruling. It's reckless disregard. If any infringer, if you violate the copyright, if the violation is considered as reckless disregard, then you will be treated as under 544C2. It will be treated as a willful infringement. We agree with the appellee's position. Yes, there are many federal districts. For example, the second district and some other districts. They use the knowledge standard, put on the notice, knowing the specific, and the infringer continue to infringe. Knowledge standard, also reckless disregard standard. But the key issue is so far in the Ninth Circuit, we could not trace any published opinion. Your Honor is right, yes. But so far, there's no clear standard, reckless disregard standard, published opinion issued by the Ninth Circuit. So the whole purpose for the appellant, the defendant, is trying to present to the court is because willful is a very confusing concept. It can be enlarged knowledge. It can be a very lower standard, reckless disregard. So why isn't reckless disregard, since it's an open question, why isn't reckless disregard, in your view, an appropriate extension, if you will, or interpretation of the term willful? In the Ninth Circuit, since we are in the Ninth Circuit, and in this case, we could not locate any published opinion. Yes, that's true. So if there's no published opinion, so we consider maybe the Pierce case, that's the published opinion. It's focused on the knowledge standard. We call knowingly, you knew what you're doing, and you continue doing. So if that's the case, maybe Ninth Circuit should continue following the knowledge standard. And that's a high standard because the $150,000 penalty, we call the enhanced penalty, is very harsh, very harsh penalty. And an infringer, for reckless disregard standard, that standard, it can be a very low standard. If someone, maybe unintentional, infringed or did something, trying to cooperate, but failed, but still consider a reckless disregard, and can be subject to a very high penalty, enhanced penalty up to $150,000, that's exactly the Jimmy Chan's case. Jimmy Chan is an individual, and he admitted he's a CEO, supervised the operation. And that's also come down to another issue. It's focused in the appellant's brief. It's the summary judgment issued by the law court in the Central District. Jimmy Chan submitted his declaration attached with exhibits. It's not a just self-promoted declaration stating his innocent intent or his innocence in the infringement. He made a declaration, submitted attachment, including some indemnification agreements he received from their customer, from his customer. Also, his correspondence with the RIA group, showing his cooperation or his willing to continue cooperation, and so on. And the declaration of Jimmy Chan also, his statement also were cooperated by the declarations from the RIA school. And in the law court, I think there are major two declarations. One from Jimmy Chan, and one from an employee called Ron Ayala, and he produced it. Basically, the judge weighted these two major declarations, and Jimmy Chan's declaration was substantiated by the declaration of Ron Ayala. The declaration stated clearly, Jimmy Chan, as a CEO, he allowed RIA group to send the investigator, send in the trainer, to train the employees of media group to determine how to comply with the guidelines set up by the RIA group. And even, that's during the existence of media group, that's from 1995 to 1998, 1999. And even the law was filed, Jimmy Chan invited RIA group to come down to the premises to screen and to conduct the investigation. All the cooperation, and also each disc manufactured by the media group, that's a code number. It's mandatory in the state. That's a code number. You can easily just, whenever you find a music disc produced, then you check the code number. That shows that's produced by media group. So, which means, media group's position is, each product, with their imprint, there's code number, you can trace them. It's not a copyright infringement, the underground operation without any logo. It's just a code number showing the manufacturer. And Jimmy Chan believed himself and his employees trying to cooperate. Maybe in the cooperation process there's some problem. That's a factual dispute. And he raised all those issues in his declaration. And those issues corroborated by the RIA's declaration also. That definitely raised tribal issues of material facts concerning both under the standard, knowledge standard. They're showing 150, that's close to more than 1,500 titles in violating allegedly in the complaint or first amended complaint. There was no, media group was not put on the specific knowledge on those titles. On the lower standard, we call reckless disregard. And in no case reported showing any defendant infringer. They cooperated, even cooperation was during the litigation period. They still opened the door, invited the plaintiff to investigate or screen the operation. And the reported case usually shows the defendant, underground operation, put on notice, police raid. And still continue for profit purpose, hide, close their eyes. But this is not the case. And so in this case. I understood. I think there's a statement that even after the litigation commenced, there were additional violations, alleged violations at least. There was allegation. After litigation, there was, RIA was invited to the premises and conducted an investigation. And maybe still found some copyright violation. That could be done prior to the, prior to the loss was filed. For those records, you just, those violations could be done before the filing of the lawsuit. And later on they find it and the RIA group treated it as a violation after filing the lawsuit. So weren't there, there were notices before the initiation of litigation. That wasn't the very first thing that was done. There were complaints from plaintiffs, weren't there? Prior to the filing of the lawsuit. Yes, Your Honor. There was a notice was given to Jimmy Chang. And the focus from Jimmy Chang is, notice was given to me. But I'm cooperating. I'm invited that you're trying to come to train. I invited your screening my books and my records. And those facts is different from the most of what we call the infringer for profit purpose and an underground operation. That's, and in Jimmy Chang as a CEO, he in charge. He admitted he's in charge of the operation. And maybe down in the management, maybe there's some, some potential problem. But that maybe create a tribal issue of a reckless disregard. And that's an issue for the juror instead of for the court to make a summary judgment. Your Honor, if I may, can I reserve the time? You want to reserve? Sure. Thank you. Good morning. Please, the court. I was discussing Mr. Chang's position with one of my colleagues the other day. And he posed a hypothetical to me, which I thought. You're going to try to beat us to the punch, right? Pardon me? Are you going to try to beat us to the punch by posing your own hypothetical? Go ahead. Your Honor, please. No, no, no. How about if I do it in the form of an analogy instead? That's fine. And it was this. A man goes up on top of a building on a busy street in the middle of a busy day. And without looking over the side, he tosses a brick and then he turns around and he walks away. In that situation, there's a reasonable probability that someone's going to get hurt. And if someone does get hurt, the law does not allow that man to say, Oops, sorry, I made a mistake. The law holds that man to have had knowledge because he acted in reckless disregard of a known risk. And what Mr. Chang did in this case is the intellectual property equivalent of the man with the brick on the top of the building. Mr. Chang was the CEO of a company that was in the business of replicating intellectual property. He knew that orders had to be screened for possible copyright infringement. He knew about the copyright law. And he didn't do anything to implement procedures to prevent copyrights from being infringed. His position apparently is, as I understand it, that as long as he did not know in advance, specifically, that there were copyrights that his company infringed, he can't be held liable for willful infringement. And we don't think that is the law in this circuit and we don't think that should be the law. It is true, as you pointed out, Judge Canby, that the Ninth Circuit has never expressly stated that reckless disregard is the standard. As you also pointed out, neither has it said that reckless disregard is not the standard. And we think if you look at the cases, at least some of them, they actually are applying a reckless disregard standard. The one that comes to mind most immediately is Dolman v. Agee. That was a case in which a man actually obtained a license from an entity that represented itself as the owner of the copyright in some music from some old Laurel and Hardy movies. And notwithstanding he had gotten a license from somebody who assured him, we have the rights, he then hired a copyright attorney to look into it a little further. And the copyright attorney said, and this is a quote from the case, the copyright situation is a mess. Nevertheless, this man went on to distribute recordings containing this music and also imported some Dutch recordings that had different versions of the music. And the Ninth Circuit used that evidence to say this man was a willful infringer. He knew there was a risk, he acted in disregard, in reckless disregard I would submit, of that risk. And interestingly, when I was rereading Nimmer the other day, Nimmer actually cites Dolman v. Agee in a footnote for cases standing for the proposition that reckless disregard is the standard. It's footnote, I think, 81.21 in Section 14. And we think the language in Peer is consistent with that approach. Peer says that the way that you refute evidence of reckless disregard is to show that the defendant had a good faith belief that his or her conduct was innocent and that that belief was reasonable. And reasonableness in and of itself imports the concept of recklessness into the analysis. So we think the standard is reckless disregard and we think there are strong policy reasons why it should be. Because otherwise you are effectively creating an affirmative incentive for people not to check to see whether there are potential copyright issues involved. And the facts of this case, which I'll discuss in a little more depth in a moment, really illustrate why that is so. As I mentioned before, this is a company and an individual who are in the business of duplicating intellectual property. We have a defendant who knew about copyright law. We have a defendant who knew that you needed to check to make sure that copyright law wasn't being violated. And we have a defendant running a company who did not have his company implement any procedures whatsoever to do what he knew he had to do, screen for copyright infringement. If you remove the notices that he received in this case, do you have a different case? I'm sorry, Your Honor? If you remove, in this case it's undisputed that he received notices of the infringing activity. Do you think the analysis changes under your scenario if no notices were given? I don't think it does, Your Honor, under the facts of this case. Because, as I said, Mr. Chan was in the business. He knew you had to screen. And there's enough other evidence. He, by his own admission, knew there was a potential problem because, according to him, it was his idea to bring the RIAA experts in to train on how you avoid copyright infringement. His idea. He then fails, not only fails to implement any of the suggestions of these experts who he's brought in to train, but he affirmatively ignores them. The RIAA people said that it is not sufficient and it is not reliable proof of copyright ownership or license to get an indemnity agreement from your customers. The only documentation that Mr. Chan could point to, you know, as evidence of what he did to prevent copyright infringement, were three indemnity agreements. From three customers, not even, he doesn't even tie them to any of the infringing recordings in this particular case. And it's only those three when the evidence is at a minimum, this is a company that had hundreds and hundreds of customers. So I don't think the analysis changed. The evidence is they took the music or they took the CDs, the source material they were given. They didn't listen to it when they had been trained that one of the ways that you can tell if something is a potential problem is if you listen to it and you recognize the artist and it's a popular artist. Popular artists by and large are signed to major record companies. And so if you are listening to something that doesn't come from a major record company, it's a popular artist, red flag infringement. Never listened. Another one of the indicia that they were taught was get a song list. See what it is you're being asked to infringe. The evidence, and unrefuted, was they never got song lists. So here we have a man who is inviting these experts to come in and to teach his employees what to look for, how to avoid it, and then totally ignoring everything he's been taught. So whether or not there were notices, in this particular case, Your Honor, I think the analysis is the same. It is still reckless disregard. And by his own admission, Mr. Chan placed the blame for what happened squarely at his own feet. It was undisputed that he oversaw the entire operation. It was undisputed that he authorized these particular CDs to be manufactured. He not only was in a position to supervise and control, but it's undisputed he did supervise and control. And he said in the declaration that he submitted to the district court that, I admit, the problem was a lack of effective management and oversight. He's the manager, and he's the person who oversaw. If we concluded that reckless disregard were not the standard, what does that do to your case? Does it necessarily have to be reversed, or do you think the facts support a willful violation if it's confined to a true willful violation in the normal sense of the word? Well, I'm not sure what Your Honor means by the normal sense of the word, because I've always interpreted willfulness as meaning you knew or should have known. I think inferentially, since he was the person who actually authorized and supervised the production of these particular recordings and authorized them to be manufactured, that there is sufficient evidence to say he knew, if that is the standard, given the evidence of ---- So you don't have the mens rea of intent, specific intent here you would concede? I don't think you have to have a specific mens rea of intent in the sense that Mr. Yang was talking about Mr. Chan's cooperation and the fact that he invited the RIA in and that he, in some form or fashion, cooperated with law enforcement. Maliciousness is not the standard, and there are cases so holding. The case is, excuse me, the standard is either did you know or should you have known that you were infringing a copyright. I think the evidence is sufficient that Mr. Chan both knew, but if he didn't know, that he certainly had reason to know. I would also point out, Your Honor, that other than the times that the RIA came to give training, Mr. Chan had no training at all in-house, no systems in place to prevent copyright infringement in a business, and I'm sorry to repeat myself, but in a business which replicates intellectual property. And if you look at Mr. Jin's deposition testimony, he said that when he came to the company, he didn't even know copyright infringement was a concern. He got no training. It wasn't until he'd been there a year or so and the RIA trainers came back a second time that he even learned that this was an issue and that he even learned that the RIA had been there a year or so before. And Mr. Chan admits that they had a big turnover of employees and that information that should have gotten to people about how to prevent copyright infringement frequently didn't get there. Well, I take it you're not arguing for a strict liability rule, that is, if someone in the business of replicating CDs doesn't conduct training, that they're strictly liable, are you? I'm not arguing for that, Your Honor. Although copyright infringement, apart from willfulness, is a strict liability offense, if you will. I am arguing that based on the facts of this case and what Mr. Chan admitted and what was undisputed, there is sufficient, more than sufficient evidence that there was willfulness. And I might, I'd like to observe, even though it's obviously not dispositive of whether or not summary judgment was properly granted, but this case, the facts of this case did go to a jury, the damage part of it, and the jury was given an instruction and it's in the record. They didn't have to find up to, you know, a maximum of statutory damages. The jury was told that the defendants had been found to be willful, but they had a range of between $750,000 and $150,000 per infringement, and it was up to them to decide. And they came back, and the verdict is in the record, they came back with a verdict of $90,000 per infringement. And I would submit to you, Your Honor, that a jury looked at this conduct and found it sufficiently egregious to put it on the high end of the scale in terms of the conduct and whether it was truly willful or not. Could I move you for a minute to the timeliness issue? Certainly. If the bankruptcy court had not nullified the automatic stay not pro tonque, would you say then that the appeal was timely? I'm wrestling with the question. I'm not trying to be evasive, Your Honor. If it hadn't nullified the stay not pro tonque, but it had terminated it instead of annulled it? No. If the stay, yes, if the stay was terminated, if the stay was lifted but not not pro tonque. I would still say that the appeal was not timely. And I would say even if you treat October 7th, which was the date that the court or the bankruptcy court annulled the stay, if you treat that as the triggering date for purposes of appeal, I think the appeal still is untimely. Well, that depends on what makes the motion for the rule 59 motion untimely. In other words, you have 10 days to make that kind of a tolling motion. And does the existence of an automatic stay interrupt the running of the 10 days? I believe, Your Honor, that a Rule 60 motion can be made at any reasonable time, except in circumstances. Yes. But if it's made within 10 days, it tolls it back. Correct. Time for appeal. Well, what I'm saying is, suppose you – a judgment is entered against a person, an automatic stay two days later goes into effect. A month later, the stay is lifted. The next day, it files a motion for a Rule 60 motion. Is that timely to toll the appeal? I don't think – I think that the Rule 60 motion tolls – extends the time for appeal only if it's filed within those 10 days. Even though there's a stay that prevents you from filing it? Well, you can go to the bankruptcy court, presumably, and get permission to file that motion. Although Mr. Chan filed his Rule 60 motion without the permission of the bankruptcy court, so far as I can tell. There's nothing in the record. I know in the brief you said he got the bankruptcy court's permission, but there's nothing in the record. Well, by that time, the stay had been nullified. That's correct. That's correct. But the stay – yes, you're absolutely correct. If he had wanted to toll – there was nothing that prevented him from filing his Rule 60 motion. The question is only whether filing it extended the appeal period. I think it did not because he didn't file it within 10 days, even though, as you point out, he couldn't have. He couldn't have filed it. But there was another – there were other ways if he had wanted to extend the time for appeal. He could have done that. And that would have been to make a motion to the district court under Federal Rule of Appellate Procedure, I think it is, 485. He had time to go and make a motion for additional time. See, the problem is somebody gets a judgment against him and then an automatic stay goes into effect. He loses his appeal if he doesn't go to the bankruptcy court and get some sort of a permission to file a notice of appeal, or can he wait until the stay is lifted and then file his notice? I don't think he loses his appeal, Your Honor. I think that there – he knew there was a risk in this particular case because we were seeking annulment and not termination. Yes. I mean, certainly it's a good argument that there's a manipulation of the system going on here. But I'm just – just as a matter of mechanics, I'm not sure that time is running when a stay is in effect, even if it's later nullified, non-proton. Well, I will say this, Your Honor, there is no case directly on this point. No, there is – I mean, there are some. We have allowed non-proton orders, but somewhat sparingly in bankruptcy cases because of the effect. And particularly, it is somewhat troubling that if a non-proton order is allowed in this context, then – and I'm not saying it's this case, but in another case, a debtor could rely on the automatic stay to his or her peril, subject to a later order of a non-proton which would deprive the debtor of the right to  I agree, Your Honor. There are circumstances that could happen. Why is this different? I mean, it seems to me the question is maybe, and I'm not sure that he's raised it, but the question may be, does the bankruptcy court have the power, non-proton, to lift this – to rule a stay in nullity? Does the bankruptcy court have the power? Yes, with this kind of implication. I believe it does. I mean, I believe that the statute is phrased in terms of annulment or termination. Right. But do you have a case that's on point on this particular issue? On this particular issue, I do not, Your Honor. I just have the bankruptcy code. Yeah. Do you have a minute left? Is there anything else you want to highlight for us? No, thank you. All right. Thank you very much. And we've read your brief thoroughly, and we understand your position. Thank you. Thank you, Your Honor. With respect to the timeliness of the chance appeal, as the court just zeroed in, once the judgment data filed in Chapter 7, they expect the protection under the bankruptcy code. And so it's very harsh to expect the data then immediately within 10 days to file Rule 60 motion in this case, and within 30 days to file the notice of appeal. While the case still in bankruptcy court and the motion to allow was not even filed. So it may be harsh in the ordinary case. And consequently, the rule that you're urging might be the correct one. But it's not — it doesn't strike me as terribly harsh when somebody runs off and gets it, files a Chapter 7 proceeding, and then doesn't tell anybody. Yes. Let's let the litigation go forward. Let's the, you know, people take — The stealth filing of a bankruptcy is sort of unusual, I guess, to put it another way. Usually, I mean, usually if you wanted to stop, you run into court and say, stop the trial. We've got the automatic stay. But you didn't do that here. Your Honor, the record, may I? Yes. In the record, actually, there's a declaration from myself. He didn't tell you either. Right. And for some reason, it was not passed. And under the Federal Bankruptcy Court, the automatic stay is not effective upon notice of the claim. No, I understand. It's automatic. Hence the name. In addition, may I call your Honor's attention? On the ER submitted by the appellee, the page number 855, and the bankruptcy court in the order to annul clearly stated, should the district court enter an order vacating the judgment, and only in that event that the RIA shall seek relief from the automatic stay prior to pursuing a retrial of the matter, and so on. So there's basically, in bankruptcy court, this issue was addressed in the bankruptcy court. Well, just go to the Federal District Court. I issued the law, and you go to the Federal District Court to proceed with additional action. So that's it. I think their argument is, in this case, that you did have the option of going. You had some other remedies in front of the Federal District Court under Federalism of Appellate Procedure and otherwise. And that may have been what the bankruptcy court was thinking about, in nullifying it and allowing you to go to the district court to seek relief. But you didn't do that. Yeah. So far, with respect to the allotment, then if it's allowed, then the judgment that, in this case, Jimmy Chen lose all the right to appeal and so on. Right. So far, there's no reporting case. And for equitable purpose, I think this is $130 million judgment against an individual, a CEO. Also, this triggered a CEO's liability. This is a corporation with many shareholders. Jimmy Chen just happened to be appointing CEO supervision. Then now there's a tribute willful infringement, where he was not even deposed. The employee made a statement, said, oh, our training may be the employee made some statements. We don't care if there's an instruction we don't follow. But that's not Jimmy Chen's declaration. There's no such Jimmy Chen's own declaration showing he disputed the facts. He showed his cooperation. He admitted the management problem. But those issues create a tribal issue under the reckless disregard standard, if court adopt that standard. That's for the jury to decide. Otherwise, if his opportunity is deprived, then now the IAEA is looking for the infringer, download on the internet and so on. If those potential infringer or defendant, they raise the issue, say, well, if reckless disregard is the standard, they raise the issue, say, why I reckless disregard, why I did this, and then reckless disregard is very low standard. And easily summary judgment, there's no way those defendant can defend their case. Just based on summary judgment, they're out. Because infringement, once they download one song, that's infringement already. That's already created a very bad impression, just like Jimmy Chen. Once they publish one music disc, that's already infringement. Then even Jimmy Chen present his evidence, say, how cooperation or I tried to do something, but I failed. Then maybe that's, to the district court, maybe say, well, that's not sufficient. But that's create a tribal issue. That's a material issue. And this is not intentional, with knowledge. And in this case, there's no record showing the 1,500 song was put on notice, the mail to the media group or Jimmy Chen, say, we spot 1,500 song infringed and stop today. But one month later, then they continue. This is not case. The notice was given was pretty stagy. You violate our members, right? That's exactly the video views case. Video views case, the notice was pretty general. And eventually, the juror ruled against the defendants. That's infringement. But in NOV, the court reversed it. The court said, no, the notice itself didn't give the specific. And if you failed that specific notice requirement, then you cannot, based on the law, they just standard or reckless disregard standard. And the court just reversed it. For conclusion, Your Honor, copyright infringement, it's for, there could be a lot of chance the infringer, their infringement is not willful. It's non-willful. And the court should allow them to produce rebuttable, we call the tribal material facts, tribal issue of material facts, to show their cooperation, to show why they do this, and so on. And as to the standard, and so far, 9th Circuit doesn't have a reckless disregard standard. And maybe the better standard is knowledge standard. It's a little high standard. You put someone on notice. Then if they do something wrong, then you cite them for the enhanced infringement. Maybe that's fair and equitable. But you lower the standard, reckless disregard. You know you're short-noted. Nowadays, if that standard is enforced, I think nowadays, if RAAs file lawsuits against all those downloader, download all the copyright from the site, it's reckless disregard. There's no defense. And if they restore tribal issue of facts, say, well, for that reason, I did this for that reason, then the court can easily rule, based on summary judgment standard, say, well, reckless disregard. You just ignore it. You're just hiding. You're just for your own motive, profit purpose, whatever purpose. And there's no case. The defendant powerless. So in this case, again, there's evidence showing cooperation. Yeah, cooperation. Maybe it's not up to the degree the RAA expected. It's not up to the degree the judge expected in the lower court. But to the juror, Jimmy Chen should have a day present the evidence to the juror, showing his cooperation from day one to litigation to litigation and after. Your time has expired. Thank you. And we thank you for your argument. Case to serve will be submitted. And we'll proceed to the next case on the oral argument calendar, Swirsky v. Carey.
judges: Canby, Noonan, Thomas